Witbeck *v.* Holland.

ABRAM WITBECK *vs.* ALEXANDER HOLLAND, Treasurer of the American Express Company.

It is the duty of an express company, upon a package being intrusted to it for transportation, to ascertain by all reasonable inquiry, the residence of the consignee, at the place to which the package is directed, and to deliver it to him personally, at his residence or elsewhere.

An express company cannot relieve itself from the liability arising from the non-performance of this duty, nor change its responsibility from that of a common carrier to that of warehousemen, by giving notice to the consignee, either by letter or personally, that the package is at its office, ready to be delivered to him upon being called for.

Its contract is to transport the package to the place where the consignee resides, as indicated by the direction upon it; to search for him at that place; and to deliver the package to him at his residence, or place of business, or elsewhere. But the consignee is under no obligation to call at the express office for the package; nor to do more than notify the company where he may be found, at the city or town, upon *receiving* notice in some way, that the package has arrived, and that the company has made efforts to find his residence or place of business, and was unable to ascertain either.

Where an express company undertook to carry and deliver a package addressed to " Martin Witbeck, Schenectady," and on its arrival at that place, not knowing the consignee, nor finding his name in the directory, addressed a note, through the post-office, to "Martin W*h*itbeck," stating that the company had received a package, (describing it,) and that it was at the risk of the owner, at the express office; *Held* that even if such note had been received by the consignee, it would not have relieved the company of its liability as a common carrier, for the loss of the package by theft.

And it being shown that the consignee resided at Schenectady; that the residence at that place of two families of the same surname as the consignee, was communicated to the agent of the express company, and that no inquiry was made of either of those families, for the residence of the consignee, when inquiry of either must have disclosed it; *Held* that the negligence of the company was established.

Where the contract between a consignor and an express company, under which a package was forwarded by that company from the place of its receipt to New York, and there delivered to another express company, for transportation to Schenectady, was, by its terms, to terminate upon the delivery of the package, by its agent, in New York, to other parties, to complete the transportation to the consignee; and it contained no provision as to the liability of parties to whom the package might be delivered by the company receiving it; and did not provide for the carrying of the package over the whole route; and there was no arrangement between the two companies for the transportation of packages over the entire route; *Held* that the contract between the company receiving the package, and the consignor, had no effect upon, and did not control, the liability of the company to whom the package was delivered by the one receiving it.

That, under the circumstances, the company undertaking to carry the package over the latter part of the route, was to be deemed to have received it under no special arrangement, but under the general responsibility of express carriers, without limitation or qualification, except such as the law attaches to such carriers.

APPEAL from a judgment entered upon the report of a referee.

The plaintiff, who was a soldier at Hart's Island, having received his bounty, delivered a part of it ($320) to the Adams Express Company to carry to his brother, Martin Witbeck, Schenectady, N. Y., for safe keeping. That company brought it to the city of New York, and there delivered it to the defendants' company. The latter carried it to Schenectady, and delivered it to its agent there, about December 5, 1865. The agent at Schenectady, not knowing the consignee, examined the city directory, to find him. His name was not in either directory, although two were published for that year. These directories contained the names, Abram Whitbeck, Garret Whitbeck, conductor, Luke Whitbeck, conductor, Peter I. Whitbeck and Daniel Witbeck. Peter I. was the father, and Daniel

was the brother, of the consignee, while Abram was a distant relative. The two conductors lived at one house. The father, Daniel and the consignee, lived in one house. Not finding the name in the directory, the agent made out a notice, intended to be addressed the same as the parcel, and deposited it in the post-office, notifying the consignee of the arrival of the package, and asking him to come and get it. The notice was addressed "Martin W*h*itbeck, Schenectady, N. Y.," while the parcel was addressed "Martin Witbeck," &c. The notice never was received by Martin. The plaintiff wrote to his brother, about the parcel, December 8, 1864, but the letter was not received until February, 1865. Martin immediately went to the office of the defendants' company, and demanded the parcel, but was informed that it had been stolen, on the 17th of January, 1865. Their safe had been blown open, and it, with other parcels, had been taken by the burglars.

The referee reported in favor of the plaintiff, and judgment being entered, the defendant appealed.

*Hooper C. Van Vorst,* for the appellant.

*John L. Hill,* for the respondent.

*By the Court,* ROSEKRANS, J. The evidence fully justified the referee in finding that the defendants did not make due effort, nor use due diligence, to find Martin Witbeck, the consignee of the package for the recovery of which the action is brought.

It appears by the testimony of John Bradt, one of the defendants' witnesses, that in December, 1864, soon after the arrival of the package at the defendants' office in Schenectady, Morse, the defendants' agent, made inquiry of him as to Martin Witbeck, the consignee; and although Bradt did not know Martin Witbeck, Morse was informed by him of the residence in Schenectady of Fort Witbeck,

Peter I. Witbeck, and the two Witbecks who were .conductors upon the railroad. The defendants' agent therefore made inquiry of the two conductors, but made no inquiry of the other two Witbecks, whose names had been communicated to him. One of whom was the father, and the other the brother of Martin Witbeck, the consignee; and with the former of whom Martin Witbeck was then living, at No. 11 Park Place. It is quite clear that had the defendants made inquiry of the consignee's father, they could have ascertained where the consignee could have been found, and thus have been enabled to fulfill their contract to deliver the package to him personally.

It was the duty of the defendants to ascertain, by all reasonable inquiry, the residence of the consignee at Schenectady, and to deliver to him, at his residence or elsewhere, the package intrusted to them for that purpose. This duty is implied from the very nature of the business in which the defendants were engaged, and for the service of carrying the package, and ascertaining the residence of the consignee, and the delivery of the package to him personally, they were entitled to charge a reasonable compensation. Nor could the defendants relieve themselves of the liability arising from the non-performance of this duty, nor change their responsibility from that of a common carrier to that of warehousemen, by giving the notice to the consignee, either by letter or personally, that the package was at their office, ready to be delivered to him upon being called for. The defendants' contract was to transport the package to the place where the consignee resided, as indicated by the direction upon it; to search for him at that place, and to deliver the package to him at his residence, or place of business, or elsewhere; but the consignee was under no obligation to call at the office of the defendants for the package, nor to do more than to notify them of his residence or place of business, or where he might be found, at Schenectady, upon *receiving* the

Witbeck *v.* Holland.

notice in some way, that the package had arrived, and that they had made efforts to find his residence or place of business, and were unable to ascertain either.

Had the letter, which the defendants caused to be deposited in the post-office at Schenectady—addressed, not to Martin Witbeck, but to Martin W*hit*beck—been received by him, it would not have relieved the defendants from their liability as common carriers, for the loss of the package. It contained no information to the person to whom it was addressed that the defendants were not able to fulfill their contract by delivering the package to the consignee; or that they had made any efforts to ascertain his residence or place of business, which were ineffectual. It merely stated that the defendants had received the package, (describing it,) and that the package was at the risk of the owner, at their office. The consignee might, upon the receipt of this letter, have remained silent, or answered to the defendants in these words: "Fulfill your contract to deliver the package to me; and as to the package being at my risk while it remains in your hands, I would say, you have no right to impose such terms, unless they were contained in the original contract under which you received the package, and if they were, the information is unnecessary on your part."

The general rule is that a common carrier is bound not only safely to convey, but safely to deliver, a parcel which he has undertaken to carry, at the place to which it is directed, to the consignee, personally. Personal delivery, however, is sometimes dispensed with in the case of carrying by ships, boats and railways. Notice given to the consignee of the arrival and place of deposit, comes in lieu of personal delivery, in such cases. (*Fisk* v. *Newton*, 1 *Denio*, 45.) The rule is different, however, in regard to express carriers.

The duties of express carriers are stated in an article written by Judge Redfield, published in the American

*Law Register,* (*vol.* 5, *N. S. p.* 7,) as follows: "In turning our attention more especially to the responsibility of express carriers, the first consideration distinctive of this mode of transportation is, that they are bound to deliver parcels to the persons to whom they are addressed. This was the general rule as to carriers by land, until since the introduction of railways. (*Hyde* v. *Trent and Mersey Nav. Co.,* 5 *T. R.* 389. *Stephenson* v. *Hart,* 4 *Bing.* 476. *Farmers and Mechanics' Bank* v. *Champlain Trans. Co.,* 23 *Verm. Rep.* 186.) Since the introduction of railways, carriers in that mode have been exempted from personal delivery of their parcels, and allowed to deposit them in warehouses, and thus exonerate themselves from the longer continuance of the responsibility of carriers. (*Thomas* v. *Boston and Prov. Railroad Co.,* 10 *Metc.* 472.) But the great necessity of having express carriers arose from this defect in delivering of goods by the ordinary railway transportation, and the same defect also existed in regard to the delivery of goods transported by steamboats. They could only deliver at the wharves, and were not expected to employ special messengers and porters to deliver their goods. (*Chickering* v. *Fowler,* 4 *Pick.* 371.) But it was to remedy this inconvenience and restore the carrying business by land to its former state, in some degree, that express companies have come into use, with the distinctive character of making personal delivery of their parcels to the consignees. (*Redfield on Railways,* § 127.) This has been so often decided that it is scarcely required that any considerable number of cases should be cited. This question is considerably examined, and the views stated fully confirmed, in the case of *Baldwin* v. *The American Express Company,* (23 *Ill. R.* 197; *affirmed,* 26 *id.* 504.")

It is claimed that the contract between the consignor and the Adams Express Company, under which the package was forwarded by the Adams Express Company from Hart's Island to New York, and there delivered to the de-

Witbeck *v.* Holland.

fendants for transportation is to control the liability of the defendants, and limit it to that of forwarders, merely. It appears, however, that the contract with the Adams Express Company, by its terms, was to terminate upon the delivery of the package by its agent in New York, to other parties, to complete the transportation to the consignee. It contains no provision as to the liabilities of parties to whom the package might be delivered by the Adams Express Company. It did not provide for the transportation of the package over the whole route. Under these circumstances, the contract between the Adams Express Company and the consignor has no effect upon the liability of the defendants. They received the package under no special arrangement, but under the general responsibility of express carriers, without limitation or qualification, except such as the law attaches to such carriers.

The evidence given by the plaintiff, that Martin Witbeck was well known at Schenectady, was wholly immaterial, and should have been rejected by the referee; but its introduction could not possibly have tended to the injury of the defendants. The negligence was established by showing that the consignee resided at Schenectady; that the residence at Schenectady of two families of the same surname as the consignee was communicated to the defendants' agent; and that no inquiry was made of either of those families for the residence of the consignee, when inquiry of either must have disclosed it. The judgment should not be reversed for this erroneous evidence.

The judgment should be affirmed.

[SCHENECTADY GENERAL TERM, January 4, 1870. *James, Rosekrans, Potter* and *Bockes,* Justices.]