(23 Misc. Rep. 585.)

ST. JOHN v. EBERLIN.

(Supreme Court, Trial Term, New York County. May 31, 1898.)

1. CORPORATIONS—STOCKHOLDERS.
    A purchase of stock in a corporation, and the entering of the transfer on the corporation books, make the purchaser a stockholder, for all legal purposes.

2. SAME—FURNISHING STATEMENT TO STOCKHOLDER—VERIFICATION.
    2 Rev. St. (9th Ed.) p. 1024, § 52, providing that the treasurer of a corporation shall deliver a statement of its affairs, under oath, on the application of a stockholder, is not complied with by furnishing an unsworn statement, unless verification is waived.

3. CORPORATIONS—PENAL STATUTES—ENFORCEMENT.
    Statutes imposing a specific obligation on a corporation official are to be enforced according to the legislative intent, though they are highly penal.

4. SAME—CUMULATIVE PENALTIES—COLLECTION.
    2 Rev. St. (9th Ed.) p. 1024, § 52, imposing an additional penalty of $10 a day on the treasurer of a corporation who shall refuse to give a sworn statement of the business within 30 days from the application by a stockholder, permits the collection by a stockholder of $10 per day from the end of the 30 days up to the time of the commencement of his action for such penalty.

Action by Lewis E. St. John against Charles Eberlin to charge defendant, as treasurer of the Equitable Stock Company, with the statutory penalty for failure to deliver to plaintiff, as a stockholder of said company, a financial statement of its condition. Judgment for plaintiff on the special verdict.

John O'Donnell, for plaintiff.
Charles Fox, for defendant.

McADAM, J. On June 24, 1896, the plaintiff purchased 125 shares of the Equitable Stock Company, and on the following day served a written demand on the defendant, as treasurer, "for a particular account, in writing, under oath, of all the assets and liabilities of the company." The transfer was entered on the corporate books, and the plaintiff became a stockholder, for all legal purposes. See Stock Corporation Law, § 29; Rosevelt v. Brown, 11 N. Y. 148, 152; United States Trust Co. v. United States Fire Ins. Co., 18 N. Y. 199; Johnson v. Underhill, 52 N. Y. 203; Shellington v. Howland, 53 N. Y. 371, 376; Vail v. Hamilton, 85 N. Y. 453, 458; Cutting v. Damerel, 88 N. Y. 410, 416. On July 18, 1896, the defendant sent the plaintiff the proper statement, but not verified by oath, as required by statute. The plaintiff testified, and the jury have found, that the plaintiff pointed out this defect, and insisted upon a sworn statement, and that the defendant took and maintained the position that the unsworn statement furnished was all the law required, and all the plaintiff would get. The statute provides that "stockholders * * * of any corporation, other than a moneyed corporation * * * may make a written request to the treasurer thereof * * * for a statement of its affairs under oath, embracing a particular account of all its assets and liabilities, and the treasurer shall make such statement, and deliver it to the person presenting the request, within thirty days thereafter," etc., and further provides that "for every neglect or refusal of the treasurer * * * to comply with the provisions of this section he shall forfeit and pay to the person making such request the sum of $50, and the further sum of $10 for every twenty-four hours thereafter until such statement shall be furnished." 2 Rev. St. (9th Ed.) p. 1024, § 52. The obvious purpose of the statute was to enable stockholders not in control to obtain, for their protection and guidance, a true statement of the financial condition of the corporation, that they might ascertain the value of their investment, and conserve their interests according to the best lights obtainable. To accomplish this end, and make the statement trustworthy, it must not only be made by the treasurer, but verified by his oath. The oath is made an essential part of the statement, and without it the statute is not complied with. While it may be waived by the stockholder for whose protection it is intended,—McCrea v. Bedell (Super. N. Y.) 29 N. Y. Supp. 705,—it was not waived by the plaintiff. On the contrary, it was insisted upon by him.

The popular impression that whenever a statute, penal in its character, is the subject of action or defense, courts are bound to find some means of avoiding or mitigating its effect, is fallacious. Stat-

utes are to be enforced, even though highly penal. They are not on that account to be impaired, and ought not to be construed so as to defeat the legislative aim and purpose. Cotheal v. Brouwer, 5 N. Y. 562; End. Interp. St. § 329; People v. Quant, 12 How. Prac., at page 91. "We are undoubtedly bound," says Mr. Justice Story, "to construe penal statutes strictly, and not to extend them beyond their obvious meaning by strained inferences. On the other hand, we are bound to interpret them according to the manifest import of the words, and to hold all cases which are within the words and the mischiefs to be within the remedial influence of the statute." Sedg. St. & Const. Law (2d Ed.) 282. When a statute, as this one does, imposes a specific obligation upon a corporation official, courts cannot alter or lessen the penal consequences of default; for that is matter of legislative wisdom, and not judicial concern and policy. There is an apparent disposition to avoid cumulative penalties whenever the statute is capable of an interpretation that permits the courts to hold but one penalty recoverable, but this course cannot be indulged when the act invoked gives a separate and distinct penalty for every offense, or for every day's delay, as is the case here. Suydam v. Smith, 52 N. Y. 383. The defendant had the power to stop the running of penalties by complying with the statute, which in plain language provides that until he does yield compliance the penalties are to accumulate. True, the plaintiff might have brought his suit sooner, and thereby put a limit to the amount of his recovery, but there seems to be nothing which requires a plaintiff pursuing a statutory remedy given for his protection to consult the interests of the wrongdoer, whose violation of duty furnishes the very grievance sought to be redressed. The plaintiff, by force of the statute, is entitled to recover, not only the penalty of $50 for failure to furnish the required statement, but the further sum of $10 for every day's neglect to furnish the same, up to the time of the commencement of the action, aggregating $1,760. Judgment on the special verdict is therefore rendered for this amount, with costs.