BREACH OF CONTRACT—MEASURE OF DAMAGES.
  On a breach of contract to lodge and board with plaintiff for a definite time, plaintiff cannot recover the contract price for board and room, less the amount received from other persons for the use of the room, but is entitled only to the profits which she would have made had defendant performed the contract.

Appeal from circuit court, Rockland county.

Action by Elizabeth A. Lydecker against Henry M. Valentine for breach of a contract. From a judgment entered on a verdict for plaintiff for $201, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

Snider & Hopper, for appellant.
Arthur S. Tompkins, for respondent.

PRATT, J. This action was for damages for breach of a contract for rooms and board with the plaintiff. The complaint alleged that the defendant agreed to pay plaintiff, for a room and board, $14 per week, from May 1 to November 1, 1890; that he did so pay until June 1, 1890, when he left the premises. The court charged the jury that the plaintiff was entitled to recover the amount of the contract price for board and room, less the amount of $107, which the plaintiff had from other parties for the same room. This, we think, was error. The damages could not be the whole contract price, but only what the plaintiff lost by defendant not being there, i. e. the profits she would have made if defendant had carried out the contract. The defendant's counsel asked the court to charge that proposition, but the court refused, to which exception was taken. The case was bare of evidence on which damages could be computed. The plaintiff ought to have proved how much profit she could have made if defendant had kept his contract, as basis for the jury to estimate the damages. See Wetmore v. Jaffray, 9 Hun, 140; De Lavalette v. Wendt, 11 Hun, 432. Judgment reversed, and new trial granted; costs to abide the event. All concur.

---

(4 Misc. Rep. 474.)

## CLOSE v. BRADY.

(Superior Court of Buffalo, General Term. July 14, 1893.)

1. CORPORATE DEBTS—INDIVIDUAL LIABILITY OF STOCKHOLDERS.
    Laws 1890, c. 564, § 57, provides, in regard to stock corporations, that "stockholders shall, jointly and severally, be personally liable to the creditors, to an amount equal to the amount of stock held by them, for all debts and contracts made by the corporation, until the whole amount of its capital stock shall have been paid in, and a certificate thereof signed and filed." *Held,* that defendant was not liable thereunder on a note

which was executed by the corporation while he was a stockholder, but which was not discounted until after he disposed of his stock. Hatch, J., dissenting.

2. SAME.

The fact that the note was dated as of the time of its execution, and the person seeking to enforce defendant's liability was a bona fide purchaser for value, was immaterial. Hatch, J., dissenting.

3. SAME—ESTOPPEL.

Defendant was not estopped to deny his liability as stockholder by the fact that he was treasurer of the corporation at the time the note was executed, and that he signed it as such.

Exceptions from trial term.

Actions by Charles J. Close against Charles P. Brady to enforce individual liability on defendant's part as a stockholder of the American Bit & Brace Company. Finding for defendant. Motion for a new trial on exceptions ordered to be heard in the first instance at the general term. Motion denied by divided court.

Argued before TITUS, C. J., and HATCH, J.

Simon Fleischmann, for plaintiff.
Shire, Van Peyma & Jellinek, for defendant.

TITUS, C. J. This is a motion for a new trial on exceptions ordered to be heard in the first instance at the general term. The facts in the case are undisputed. The American Bit & Brace Company was organized under the act to authorize the formation of corporations for manufacturing and other purposes, being chapter 40 of the Laws of 1848. The capital stock of the company has never been paid in, nor has any certificate thereof been made and recorded, as required by section 11 of that act. From the 2d day of January, 1892, until the 28th day of January, the defendant was the holder of 56 shares of the capital stock of the company, of the par value of $100 each share, and was during that time secretary and treasurer of the company. On the 28th day of January, 1892, the defendant sold 55 shares of his stock, and the same were on that day transferred on the books of the company to the purchaser, and 1 share was sold by him, and transferred on the books of the company, on the 20th day of February, 1892. On the 2d day of January, 1892, the company made two promissory notes, for four and eight months respectively, of $5,000 each, payable to the order of the company. The notes were signed by the treasurer, and countersigned by the president, Mr. Preston, and delivered to him, as the agent of the company, for negotiation and sale. On February 27th the company sold and delivered these notes to Gertrude E. Lee, for full value, who transferred the same to the plaintiff, for value, before maturity. The two notes were subsequently renewed, and the amount of them put in one note of $10,200, which included accrued interest. From January 2d to February 27th, when they were sold to Mrs. Lee, the notes remained in the possession of the company, unsold and undelivered. On the trial the court, on these facts, directed a verdict for the defendant. The only question raised is, is the defendant,

under the statute, as stockholder, liable for the debt created, and for which these notes were given?   The theory of the counsel for the plaintiff, so far as I am able to gather from his brief, is that the stockholders are liable to the creditors, the same as partners, and that as one partner may bind another, after the dissolution of the firm, by the firm's paper, if the payee is not chargeable with notice of dissolution of partnership, and is a bona fide holder, so, here, the plaintiff being a bona fide holder, without notice that the defendant had parted with his stock, he is liable as a partner would be under such circumstances.

It may be assumed, as intimated in some of the cases, that stockholders are liable as partners, but in the cases examined it is expressly held that such liability is limited by statute.  But where the statute has created or continued the liability against the stockholders, and limited it, as is done by the act of 1848, it becomes immaterial whether they are liable as partners or not.  The question of their liability is to be determined by the statute itself, as construed by the courts; and, as the statute expressly fixes that liability, it would seem only necessary to make reference to it.  By section 57 of chapter 564 of the Laws of 1890, which is substantially a re-enactment of section 10 of the act of 1848, it is provided that:

"Stockholders shall, jointly and severally, be personally liable to the creditors, to an amount equal to the amount of stock held by them, for all debts and contracts made by the corporation, until the whole amount of its capital stock shall have been paid in, and a certificate thereof signed and filed."

The language of the statute seems to be clear enough to justify the court, without further authority, in holding that, before the stockholder can be charged with the debts of the corporation, it must appear that he was such stockholder at the time the debt was created.  The question has frequently been before the courts under the act of 1848, as well as other of the corporation laws, and the cases are quite uniform in holding to this construction of the statute.  The citation of a few will be sufficient to show the line of reasoning of the courts, and the rules adopted:  Moss v. Oakley, 2 Hill, 265;  Johnson v. Underhill, 52 N. Y. 203;  Tucker v. Gilman, 121 N. Y. 189, 24 N. E. Rep. 302.  The construction given by the courts, in these cases, to this statute, fixes the liability of the stockholders who were such at the time of the creation of the debt; and as the defendant was not a stockholder when the note was negotiated, and the debt created, he is not chargeable with the payment of these notes, unless it is by some legal fiction which will make the statute ineffective.  It is the claim of the plaintiff's counsel that the plaintiff is the bona fide holder of the notes, for value, before maturity, and no defense can be interposed by the defendant.  The defendant is not the maker of the note.  His position, at most, is that of surety for the corporation, by reason of its failure to complete its organization.  I do not think the rule is applicable to the facts, as they appear in the case.  Before he can be charged as a stockholder, he must have been such when the debt

was created. Moss v. Oakley, supra. In order to charge the defendant, it was incumbent upon the plaintiff to show his relation to the company. The note itself does not show him personally to be the maker of it. Therefore, it requires proof or evidence that he is a stockholder, before any claim can be made against him. It seems to me that the plaintiff's legal status, as bona fide holder of the note, does not affect the right of the defendant, under such circumstances, to avail himself of the defense authorized by the statute, to enable him to show that he was not a stockholder when the debt was created, and consequently not liable. Bond v. Appleton, 8 Mass. 472. The application of such a rule would put it out of the power of one who had ever been a stockholder in a corporation to set up the defense which the statute inferentially gives him in an action of this character, no matter when the debt was created. Nor do I think the position of the counsel tenable when he claims that the defendant is estopped from defending against his liability as a stockholder because he was treasurer of the corporation at the time the note bears date, and as such signed it. The fact that he was treasurer adds nothing to his statutory liability. His act in signing the note was that of agent. He did not act in his individual capacity, and so that fact alone cannot be urged to create an individual liability against him. It seems to me that the fact that he was not a stockholder when the debt was incurred—when the notes were sold and delivered to Mrs. Lee—must control the decision of this case. The notes, while in the hands of the company, created no debt against it. They were without legal force or inception. No consideration had been given for the making of the notes, and it was not until the money was received, and the notes delivered by the corporation, that there was an indebtedness created against it. Powell v. Waters, 8 Cow. 687. This is not disputed, but it is claimed that, when they were delivered to Mrs. Lee, they took effect from their date, and that a different date than that specified in the notes cannot be shown. If the action was against the corporation, that would be the rule, but, as a stockholder, the defendant is a stranger to the note. The plaintiff is seeking to charge such a one with the payment of the corporation debt, and it does not seem to me that that rule is applicable to such a case, but that the defendant is at liberty to show the true time of the creation of the debt, and that at such time he was not a stockholder of the corporation. If I am correct in this position, the case was properly disposed of at the trial term. The exceptions, therefore, to the ruling of the trial court, should be overruled, and judgment ordered for the defendant, with costs.

HATCH, J., (dissenting.) I am unable to agree with the reasoning and conclusion of the learned chief judge in this case, for the following reasons:

When it appeared that the whole amount of capital stock of the company had not been paid in, and that no certificate stating the amount of the capital stock, as fixed, or any part thereof, had been

paid in, was ever made, filed, or recorded, as required by law, it followed, as matter of law, that, for all debts and liabilities created by the company, the stockholders, and each of them, became, jointly and severally, personally liable to the creditors of the corporation, in an amount equal to the amount of stock held by each of them respectively. This liability is not the creation of the statute. It rests for its basic ground upon contract, which contract was that if the stock was not paid in, and the certificate filed, then the stockholder would be liable for the debt, as a result of his connection with the company. Corning v. McCullough, 1 N. Y. 58, 76; Rogers v. Decker, 131 N. Y. 492, 30 N. E. Rep. 571. The only effect of the statute, in such case, is to define and limit the contract, or, in other words, fix the liability. Story v. Furman, 25 N. Y. 223. It becomes and is a part of the contract. Cochran v. Wiechers, 119 N. Y. 402, 23 N. E. Rep. 803. This result is only true of stockholders who are such at the time when the debt is contracted, but such fact is conclusively evidenced when the stockholder's name appears upon the books of the corporation as a stockholder, even though he may have parted with title to his stock. Johnson v. Underhill, 52 N. Y. 203. These rules have an important bearing upon the present contention. When the notes in suit were executed, there is no dispute but that defendant was a stockholder appearing upon the books of the corporation, and not only was he a stockholder, but an officer. Thus, in a double sense, was proof of his ownership of stock established. His name appeared upon the books as such, and his office guarantied the fact, as such officer was required to be a stockholder. The notes were not in fact delivered upon the day of their execution and date, January 2, 1892, but remained in the custody of the corporation's officers until February 27, 1892, when they were sold for cash, and thereafter, before maturity, transferred to plaintiff, who became, and is, a bona fide holder thereof. Defendant continued in ownership of his stock until January 28, 1892, when he sold 55 shares, and on 20th February following sold 1 share. This constituted his entire holding at the time the notes were executed. The transfers were made in good faith, and entered upon the books of the company. It is thus clear that, when the notes were dated and executed, defendant was a stockholder, and, when delivered, he was not. The trial court admitted evidence, over defendant's objection and exception, showing when the notes were in fact delivered to the purchaser. It is true, as contended for by defendant, that until delivery of the notes no debt existed, but it does not follow from such fact that defendant is thereby relieved from liability. It is doubtless true that, when the purchaser of these notes took them, she was chargeable with notice of the date of inception; and consequently, in her hands, no liability existed against defendant, in her favor. But plaintiff's position is not hers. He was and is a bona fide holder for value, and as such is entitled to every benefit which attaches to such person under the law governing commercial paper; and, as we have seen, defendant's liability resting upon contract, he is subject

to such rule. When plaintiff took this paper, he was without information respecting the time of its actual delivery, beyond what appeared upon the paper itself. This disclosed that it was made and executed, and presumptively delivered, upon the 2d day of January, and such was the character of the contract which he had a right to suppose existed. Such was the character of the contract he purchased. And I know of no rule of law which will permit a person chargeable with the creation of such an instrument to thereafter, for the purpose of escaping liability, change either the form of the contract itself, or the extrinsic fact of its inception, when, from its face, the law presumes the date of such inception. That this presumption arose has been decided. In Powell v. Waters, 8 Cow. 687, it is said:

"A note has no binding force or legal inception, nor constitutes any contract, until delivered, and in the hands of a bona fide holder. It acquires the form of a contract from the delivery, and not, ab initio, from the execution of it. But when delivered it takes effect from its date, and, for all substantial purposes, becomes a binding contract upon the maker, ab initio."

That the date of the instrument is presumptively the date of its delivery is decided in Cowing v. Altman, 71 N. Y. 435. It is true, in that case, proof was permitted to show the actual date of delivery, but this proof was to enable a bona fide holder to recover upon it,—a very different proposition from allowing proof of like character to defeat an instrument in all respects perfect in the hands of a bona fide holder. See, also, Sanford v. Mickles, 4 Johns. 224; Bank v. Kidder, 106 N. Y. 221, 12 N. E. Rep. 577. In the latter case, recovery was permitted, in the hands of a bona fide holder, upon negotiable paper stolen from the maker. In Kinyon v. Wohlford, 17 Minn. 239, (Gil. 215,) proof of nondelivery of the paper was attempted to be shown. The court refused it, as against a bona fide holder. Upon the face of the notes, in the present case, there was nothing to put plaintiff upon inquiry. When he received them, if he had made inquiry to find who was responsible, and gone to the books of the company, he would have found, looking at the date of the notes, that defendant was a stockholder at that time, and not only a stockholder, but an officer. If he had pursued his inquiries, he would have found that defendant had disposed of his stock, and also ceased to be an officer, but this would convey nothing to plaintiff's mind affecting the security. It would simply show that defendant was not then a stockholder, but that he was upon the date of the notes, and consequently liable as such, in accordance with the terms of the contract. It might well be that such examination would disclose that defendant, in fact, was the only person of responsibility behind the notes. Could it then be said, with justice, that defendant could show a different time of delivery, to defeat the notes, when plaintiff purchased upon his sole responsibility, and prima facie the instruments showed he was then liable as a stockholder? A rule that would work such result ought not to be tolerated, and I find no case or principle which upholds it. The fact that the notes were consolidated in one note after defend-

ant in fact ceased to be a stockholder does not change the result. No new indebtedness was thereby created. Payment of the original note was simply extended. Iron Co. v. Walker, 76 N. Y. 521. The defendant, having signed the notes as an officer of the company, thereby, as we have seen, certified to the fact that at the time he was a stockholder. This was a fact upon which a purchaser might safely rely. As defendant, by his act, misled, or may have misled, the plaintiff, upon plain principles he should not now be heard in denial of a fact to plaintiff's prejudice. Moss v. Averell, 10 N. Y. 459; Brown v. Torrey, 42 N. Y. Super. Ct. R. 1; Perkins v. Hatch, 4 Hun, 137. I see no distinction, in principle, between the enforcement of the doctrine of estoppel, where the irregularity of incorporation is sought to be shown, or the invalidity of a corporate act for lack of power, and where the officer, possessing the power, seeks to defeat the liability arising from its exercise, by proof of facts extrinsic of what the contract purports upon its face to be. If these views are correct, it follows that the exceptions should be sustained, and the motion for a new trial granted; costs to abide event.